[No. 1371.]

## Trayes et al. v. Johns.

11  219
f25c 242

Contracts—Partnership—Consideration.

An agreement for partnership, like other contracts, must be founded on a consideration. A naked promise by one person that another shall share in the profits of his enterprise, where the other furnishes no capital or labor or anything towards the promotion of the common enterprise, is void.

*Appeal from the District Court of Pitkin County.*

Mr. Charles R. Bell, and Mr. H. L. McNair, for appellants.

No appearance for appellee.

Wilson, J., delivered the opinion of the court.

This was a suit in equity based upon an alleged agreement for partnership in a lease of mining property. The agreement on which the action is founded is thus set forth in the plaintiff's complaint:

" That on or about the first day of February, A. D. 1895, the plaintiff and defendants John F. Trayes and Thomas Trayes entered into an agreement whereby they were to obtain leases upon some of the blocks to be leased by The Durant Mining Company and The Compromise Mining Company, on Aspen Mountain, in The Roaring Fork Mining District, and by the terms of said agreement the said defendants, John F. Trayes and Thomas Trayes, and this plaintiff, were to be equal owners in and to whatever leases they or either of them should obtain, or any interest that either of them should acquire."

Plaintiff further alleged that about the 15th day of February following, each of said defendants did obtain an undivided one-tenth interest in and to five blocks of ground upon the mining claims of the Durant and Compromise mining companies, and that in pursuance of said contract, plaintiff was the owner of one third of said interest so acquired. The prayer of the complaint was that an accounting be had between the said defendants and the plaintiff; that he have judgment for whatever should be found due to him; and that plaintiff also be decreed to be the owner of one third of the interests so owned by said defendants. He also prayed an injunction against the First National Bank of Aspen, which was joined as a party defendant, restraining it from paying out to the defendants certain sums of money alleged to be on deposit with it, in their name. The injunction was granted as prayed for. The bank answered disclaiming any interest in the matters in controversy. The other defendants, Trayes brothers, answered specifically denying each allegation of the complaint, setting up the manner in which they secured their interest in the leases in question, the consideration paid therefor, and alleging that plaintiff had never at any time paid or offered to pay any proportion of the expenses of obtaining or prosecuting said leases. Upon trial, the court made no specific findings of fact, but simply found in favor of the application of plaintiff for an accounting, ordered an accounting, and appointed a referee to take the same. The report of the

referee was confirmed with some slight modification, and judgment was thereupon rendered in favor of plaintiff and against defendants for the sum of money found to be due to him as owner of the one-third interest in the parts of the leases held by the Trayes brothers, defendants.

In the view which we take of the case, it will not be necessary to discuss the question raised by defendants as to whether a trust in a lease of real estate can be created by parol, nor as to whether the complaint sufficiently pleaded an agreement for partnership.  Nor will it be essential to consider or decide whether an action of this kind can be maintained upon an unexecuted contract for partnership, or whether the remedy of the party complaining is an action at law for damages. The proceedings in the cause up to final judgment were upon the theory that an agreement for partnership was pleaded. We shall treat the cause, therefore, upon this theory, and upon the assumption most favorable to plaintiff that this action could be maintained under the facts and circumstances of this case.  It appears from the evidence undisputed that about February 8, 1895, defendant John F. Trayes secured a lease for a block of ground of the mining companies mentioned in the complaint.  It seems that these leases were let by competitive bidding, and that this defendant was the highest bidder for this block.  His bid was the sum of $500 as a bonus, one third to be paid in cash upon the execution of the lease, and the remainder from the proceeds derived from working under the lease.  A written lease was executed, and he paid the stipulated cash part of the bonus.  At the same time, four other blocks of ground were leased to four separate individuals, upon varying terms, not material to the determination of this cause.  It then appears that these four and defendant John F. Trayes concluded that it would be for the best interests of all to consolidate these five separate leases, working then under the same management; and in order to secure the necessary capital, that five other men should be taken in as partners.  This was agreed to, and with the consent of the mining companies, the arrangement

was consummated. One of the five men who thus acquired an interest by the payment of a proportionate share of the cash bonus exacted, and by putting up his share of such money as might be required for the working of the property, was defendant Thomas Trayes, the brother of John F. Operations were then commenced under the consolidated leases. For several months no profits whatever were realized. In October following, plaintiff commenced this suit. The evidence adduced in favor of plaintiff to sustain his claim that there was an agreement for partnership is very vague and weak. It is based upon a statement which he claims these defendants made to him while visiting him at his house. He testified that they called to see him, and had some conversation with him in reference to some blocks of ground which it was said the Durant Company intended to lease, and that they wished him to go with them to the mine, and look at these blocks, he having worked in that vicinity. He replied that it was impossible for him to go on account of being sick, and thereupon "They made the remark, 'Well, never mind, Bill, whatever we get we will share alike;' they not only said it once, but half a dozen times, and on different evenings that they called at my house." The defendants each deny making any such remark in reference to the Durant proposed leases. They claim that they had at some time previous had some conversation with him about taking a lease upon some ground of another company, and that a bid had been put in therefor, but it had been unsuccessful. The wife and daughter of the plaintiff, however, to some extent corroborated the testimony of plaintiff. They claimed to have heard substantially such a remark as that testified to by him, and that their understanding was it was made in reference to leases, or a lease, of Durant ground. Conceding that such a remark was made, the whole testimony with reference to what lease or what ground was being considered is exceedingly vague, indefinite and uncertain. We will assume, however, that it was made with reference to the identical blocks of Durant ground in a lease in which the defendants afterwards secured

an interest. It is not pretended that during the several months which elapsed from the time this lease was secured until the commencement of this suit that the plaintiff ever offered to pay to defendants his proportion, or any proportion, of the amount which they had been required to pay to secure the lease, or any part of the expenses of operation under the lease. It is not shown or pretended that he ever made any demand upon the defendants, or either of them, to be taken in or treated as a partner. It is not shown that he even during this time claimed to them that he was entitled to an interest. It is true he says that upon one occasion, several months after the lease was secured, he remarked to Thomas Trayes that he thought he had not been treated fairly by the brothers in reference to the leasing, and asked him when they were going to make an accounting with him. This, however, was in the following May, after plaintiff and the Trayes brothers had endeavored to secure a lease upon another block of the Durant property, when plaintiff had put in a bid, but did not secure the lease. Admitting however that the remark was in reference to the identical lease in question, it was the only thing said by him in the nature of a complaint. He made no effort to assert his rights, and no demand whatever upon the defendants. These facts are not material to the point which is decisive of this case, but we mention them to show what an utter want of equity there is in plaintiff's contention as viewed in any aspect. A court of equity if it attempts at all to enforce rights based upon so slight a foundation as those claimed by plaintiff, will certainly not do so unless they are asserted in proper time, and with proper diligence. A failure to assert them furnishes the strongest proof of their nonexistence or abandonment.

The fact, however, that the alleged agreement was confessedly without consideration, settles this case. An agreement for partnership, like any other contract, must be founded on a consideration of mutual promises or contributions of some character. A naked promise by one person that another shall share in the profits of his enterprise where the other fur-

nishes no capital or labor or anything towards the promotion of the common enterprise, is void. In this case the plaintiff seeks to reap the benefits of the labors and expenditures of these defendants, without pretending that he ever furnished one cent, or ever performed any labor, or did anything whatever which tended to the securing of the lease, or its operation. He would certainly stand upon better equitable if not legal ground, if it were shown that within any reasonable time after the lease was secured, he had offered to pay some portion of the money necessarily advanced, or to perform some labor in the operations under the lease.

Neither was there any claim or attempted proof of any act or transaction jointly undertaken by plaintiff and defendants connected with or in furtherance of the securing of the lease or of any operations under it. If this had been shown, however slight the act, it might have been sufficient to bring the case within the familiar rule that where a contract is subject to different interpretations, that acted upon by the parties to it will be presumed to be the proper interpretation.

To enforce such a contract as this, where there is no mutuality between the parties, and where no consideration whatever has been paid, where one party furnishes all the money and all the labor, and the only obligation or duty resting on the other is to share in the profits, would be the taking from a person of his property arbitrarily, without any right, reason, or law. The alleged contract having been without consideration, cannot be enforced either at law or in equity. Bates on Partnership, § 2; Parsons on Partnership, § 6; *Mitchell v. O'Neale*, 4 Nev. 514.

It is therefore ordered that the judgment be reversed, and the cause remanded with instructions to dissolve the injunction, and dismiss the suit.

*Reversed.*